## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Joint Administration Pending) |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPOINTING OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this application (this "Section 156(c) Application"):

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764).  The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2]    Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to them later in this Motion. Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

Section 156(c) Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    Pursuant to Local Bankruptcy Rules 2002-1(f) and 9013-1(m), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol"), instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012, the Debtors consent to the entry of a final judgment or order with respect to this Section 156(c) Application if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### <u>Relief Requested</u>

5.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), appointing Omni Agent Solutions ("Omni") to act as claims and noticing agent in Debtors' chapter 11 cases (the "Claims and Noticing Agent") in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' cases, effective as of the Petition Date.  The facts and circumstances supporting this Section 156(c) Application are set forth in the *Declaration of Paul H. Deutch, Executive Vice President of Omni, in Support of the Debtors' Application for Entry of an Order Appointing Omni Agent Solutions as Claims and Noticing Agent, Effective as of the Petition Date* (the "Deutch Declaration"), attached hereto as **Exhibit B.**  The terms of Omni's proposed retention are set forth in the Standard Services Agreement between Omni and the

Debtors, dated as of April 26, 2023 (the "Retention Agreement"),[3] a copy of which is attached hereto as **Exhibit C**.  Notwithstanding the terms of the Retention Agreement, the Debtors are seeking to retain Omni solely on the terms set forth in this Section 156(c) Application and the Proposed Order.

## Background

6.      A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Evan Hengel in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 8, 2023 (the "Petition Date").

7.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## Omni's Qualifications And The Need For Omni's Services

8.      Omni is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, solicitation, balloting, and facilitating other

---

[3]      Omni has agreed to provide claims and noticing services to the Debtors at the rates stated on the rate structure attached to the Retention Agreement.

administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of this size

and complexity and has acted as the official claims and noticing agent and/or administrative agent

in numerous chapter 11 cases filed in this District and other districts nationwide.

9.     The appointment of Omni as the Claims and Noticing Agent in these chapter 11

cases will expedite the distribution of notices and the processing of claims, facilitate other

administrative aspects of these chapter 11 cases, and relieve the Clerk, the Debtors, and their

retained professionals of these administrative burdens.  Given the nature of these chapter 11 cases,

the Debtors believe that the appointment of Omni as the Claims and Noticing Agent will serve to

maximize the value of the Debtors' estates for all stakeholders.

## Scope of Services

10.     This Section 156(c) Application pertains only to the services to be performed by

Omni under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Bankruptcy

Rule 2002-1(f).  Any services to be performed by Omni that are set forth in the Retention

Agreement but are outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section

156(c) Application or by the Proposed Order.  Specifically, Omni will perform the following tasks

in its role as the Claims and Noticing Agent, as well as all quality control relating thereto

(collectively, the "Claims and Noticing Services"), to the extent requested by the Debtors:

     (a)     prepare and serve and/or prepare required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by the inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain an electronic interface for filing proofs of claim and a post office box or address for the receipt of proofs of claim and returned mail, and process all mail received;

(f)     for all motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, subject to the procedures set forth in the Notice and Confidentiality Motion and any order entered by the Court in connection therewith, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtors, and (vii) any disposition of the claim;

(i)    provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(j)    implement necessary security to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)    record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(l)    relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Omni, not less often than weekly;

(m)    upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)    monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)    identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(p)    assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(q)    if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of the notice to Omni of entry of the order converting the cases;

(r)    thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(s)    within seven (7) days of notice to Omni of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of these chapter 11 cases; and

(t)    at the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the Federal Archives Record Administration, located at 14700 Townsend Road,

Philadelphia, PA 19154-1096 or (ii) any other location requested by the Clerk.

11.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Omni.

### Compensation

12.     The Debtors are proposing to compensate Omni for the Claims and Noticing Services set forth above in accordance with the Retention Agreement and the rate structure attached thereto.  The Debtors request that the undisputed fees and expenses incurred by Omni in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

13.     Omni agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel to the lender under the Debtors' post-petition financing facility, counsel for any official committee(s), and any party in interest that specifically requests service of the monthly invoices.  If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.     Prior to the Petition Date, the Debtors provided Omni a retainer in the amount of $65,000 (the "Retainer"). Omni seeks to first apply the Retainer to all pre-petition invoices, and thereafter, to have the Retainer replenished to the original advance amount, and thereafter, to hold the Retainer under the Retention Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Retention Agreement.

15.     Additionally, under the terms of the Retention Agreement, the Debtors have agreed, subject to certain exceptions, to indemnify, defend and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents, under certain circumstances specified in the Retention Agreement, except in circumstances resulting from Omni's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement or the Proposed Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

### Omni's Disinterestedness

16.     Although the Debtors do not propose to employ Omni under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (as noted above, the Debtors will seek such retention by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and initial parties in interest identified by the Debtors.  Omni has represented to the Debtors that to the best of its knowledge, and except as set forth in the Deutch Declaration, neither Omni nor any of its professionals have any relationship with the Debtors that would impair Omni's ability to serve as Claims and Noticing Agent.  To the extent that Omni or its personnel have, or may have had, relationships with certain of the Debtors' creditors as described in the Deutch Declaration, Omni has represented to the Debtors that those matters are unrelated to these chapter 11 cases.

17.     Moreover, in connection with its retention as Claims and Noticing Agent, Omni represents in the Deutch Declaration, among other things, that Omni is a "disinterested person" with respect to the matters upon which it is to be engaged as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Omni and its professional personnel:

(a)    are not creditors, equity security holders, or insiders of the Debtors;

(b)    are not, and were not, within two years before the date of the filing of these chapter 11 cases, directors, officers, or employees of the Debtors; and

(c)    do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

18.    Omni further represents, among other things, as follows:

(a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(b)    by accepting employment in these chapter 11 cases, Omni waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(c)    in its capacity as Claims and Noticing Agent, Omni will not be an agent of the United States and will not act on behalf of the United States;

(d)    Omni will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent;

(e)    Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(f)    in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Omni will not intentionally misrepresent any fact to any person;

(g)    Omni shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(h)    Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(i)    none of the services provided by Omni as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

19.    Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

### Compliance with Claims and Noticing Agent Protocol

20.    This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court. To the extent that there is any inconsistency between this Section 156(c) Application, the Order, and the Retention Agreement, the Order shall govern.

### Basis for Relief

21.    The Court is permitted to appoint Omni as Claims and Noticing Agent in these chapter 11 cases. Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases. Specifically, 28 U.S.C.§ 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c). Further, section 105(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. *See* Fed. R. Bankr. P. 2002. In addition, Local Bankruptcy Rule 2002-1(f) provides that "[u]pon

motion of the debtor or trustee," in conformity with Local Bankruptcy Rule 134, "at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)." Del. Bankr. L.R. 2002-1(f).

22.     In view of the substantial number of parties receiving notice in these chapter 11 cases and the significant number of anticipated claimants, the Debtors submit that the appointment of Omni as Claims and Noticing Agent is necessary and in the best interests of the Debtors and their estates and will serve to maximize the value of the Debtors' estates for all stakeholders.

### Relief As Of The Petition Date Is Appropriate

23.     In accordance with the Debtors' request, Omni has agreed to serve as Claims and Noticing Agent on and after the Petition Date with the assurance that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that Omni can be compensated for services rendered on and after the Petition Date, including prior to the Court's approval of this Section 156(c) Application.  The Debtors believe that no party in interest will be prejudiced by the granting of the employment, as proposed in this Section 156(c) Application, because Omni has provided and continues to provide valuable services to the Debtors' estates during the interim period.

24.     Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing the Debtors to retain and employ Omni as Claims and Noticing Agent, effective as of the Petition Date.

### Waiver Of Bankruptcy Rule 6004(a) and 6004(h)

25.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is

waived.  Such waiver is warranted here because a claims and noticing agent is essential to prevent

potentially irreparable harm to the Debtors' business, value, and ability to reorganize.

## Notice

26.    The Debtors will provide notice of this Motion to: (a) the U.S. Trustee for the

District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a

consolidated basis); (c) counsel to the lender under the Debtors' post-petition financing facility;

(d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue

Service; (f) the state attorneys general for all states in which the Debtors conduct business; and (g)

any party that requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first-

day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies

of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-

1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further

notice need be given.

## No Prior Request

27.    No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court grant the relief requested in this Section 156(c) Application, Order, and such other and

further relief as is just and proper.

| | |
|---|---|
| Dated: May 8, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT &**<br>**TAYLOR, LLP** |

*/s/  Robert S. Brady*
Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Joshua Brooks (Delaware Bar No. 6765)
Rodney Square
1000 North King Street

12

Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: jbrooks@ycst.com

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Susheel Kirpalani *(pending pro hac vice)*
Patricia B. Tomasco *(pending pro hac vice)*
Daniel Holzman *(pending pro hac vice)*
Alain Jaquet *(pending pro hac vice)*
Razmig Izakelian *(pending pro hac vice)*
Valerie Ramos *(pending pro hac vice)*
Joanna D. Caytas *(pending pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**PROPOSED COUNSEL FOR THE DEBTORS**

**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. _____ |

## ORDER APPOINTING OMNI AGENT SOLUTIONS AS CLAIMS
## AND NOTICING AGENT, EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Section 156(c) Application")[2] of the Debtors for entry of an

order (this "Order") pursuant to 28 U.S.C. § 156(c), section 105(a) of title 11 of the United States

Code (the "Bankruptcy Code"), Bankruptcy Rule 2002, and rule 2002-1(f) of the Local Rules of

the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"),

appointing Omni Agent Solutions ("Omni") as the Claims and Noticing Agent in the Debtors'

chapter 11 cases, effective as of the Petition Date, to, among other things, (a) distribute required

notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of

claim filed in the Debtors' chapter 11 cases, and (c) provide such other administrative services as

required by the Debtors that would fall within the purview of services to be provided by the Clerk's

office, as more fully set forth in the Section 156(c) Application; and the Court having jurisdiction

to consider the Section 156(c) Application and the relief requested therein in accordance with 28

U.S.C. § 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764).  The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2]    All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Section 156(c) Application.

C.J.); and consideration of the Section 156(c) Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Section 156(c) Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Section 156(c) Application (the "Hearing"); and upon consideration of the Deutch Declaration and the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

1.      The Section 156(c) Application is GRANTED as set forth herein.

2.      Notwithstanding the terms of the Retention Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order.

3.      Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), the Debtors are authorized to retain Omni as Claims and Noticing Agent in these chapter 11 cases, effective as of the Petition Date, under the terms of the Retention Agreement, and Omni is authorized to perform the Claims and Noticing Services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and perform all related tasks as set forth in the Section 156(c) Application.

4.      Omni shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized to maintain the official Claims Register for the Debtors, to provide public access to every proof of

claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5.       Omni is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

6.       Omni is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.       Omni shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.       Without further order of this Court, the Debtors are authorized to compensate Omni for its Claims and Noticing Services in accordance with the terms and conditions of the Retention Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Omni and the rates charged for each, and to reimburse Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.  For the avoidance of doubt, notwithstanding anything in the Application or Retention Agreement to the contrary, Omni shall seek reimbursement of all "out of pocket" or "pass-through" expenses at the cost which it paid for same.

9.       Omni shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any statutory committee monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Retention Agreement or monthly invoices, *provided that* parties may seek resolution of the matter from the Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Omni's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtors' chapter 11 estates.

12.     Omni may apply its advance to all pre-petition invoices, and Omni may hold its advance under the Retention Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Retention Agreement.

13.     The Debtors are authorized to indemnify Omni under the terms of the Retention Agreement, subject to the following modifications:

(a)     Omni shall not be entitled to indemnification, contribution or reimbursement pursuant to the Retention Agreement for services other than the Claims and Noticing Services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b)     Notwithstanding anything to the contrary in the Retention Agreement, the Debtors shall have no obligation to indemnify Omni, or provide contribution or reimbursement to Omni, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Omni's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Omni's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, Omni believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or

4

reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, Omni must file an application therefor in this Court, and the Debtors may not pay any such amounts to Omni before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Omni for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Omni. All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

14.    The limitation of liability provision contained in the Retention Agreement shall have no force and effect during the pendency of these Chapter 11 Cases.

15.    In the event Omni is unable to provide the Claims and Noticing Services, Omni shall immediately notify the Clerk and Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

16.    The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by Omni but are not specifically authorized by this Order.

17.    Omni shall not cease providing Claims and Noticing Services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court authorizing Omni to do so; *provided that* Omni may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtors, the U.S. Trustee, and any official committee of creditors appointed, if any, in these cases by facsimile or overnight delivery; *provided*, further, that except as expressly provided herein, the Debtors and Omni may otherwise terminate or suspend other services as provided under the Retention Agreement.

18.    After entry of an order terminating Omni's services as the Claims and Noticing Agent, upon the closing of these Chapter 11 Cases, or for any other reason, Omni shall be

responsible for preparing all proofs of claim to be archived with the Federal Archives Record Administration, if applicable. Timely payment of Omni's fees and costs relating to such services shall be the responsibility of the Debtors' estate or any relevant succeeding chapter 11 entity including, but not limited to, a reorganized debtor, plan administrator, or liquidating trustee.

19.     Notice of the Section 156(c) Application shall be deemed good and sufficient notice of such application, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are waived by such notice.

20.     In the event of any inconsistency between the Retention Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

21.     The Debtors are authorized to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

22.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied.

23.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

24.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

25.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

26.     The Debtors and Omni are authorized to take all actions necessary to implement the relief granted in this Order.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

**<u>EXHIBIT B</u>**

**Deutch Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Joint Administration Pending) |

**DECLARATION OF PAUL H. DEUTCH, EXECUTIVE VICE PRESIDENT OF OMNI, IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPOINTING OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF THE PETITION DATE**

I, Paul H. Deutch, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.      I am the Executive Vice President of Omni Agent Solutions ("Omni").[2]  The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.[3]

2.      This Declaration is made in support of the *Debtors' Application for Entry of an Order Appointing Omni Agent Solutions as Claims and Noticing Agent, Effective as of the Petition Date* (the "Section 156(c) Application") filed contemporaneously herewith by the Debtors, for entry of an order pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Bankruptcy Rule 2002-1(f), appointing

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764).  The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2]   All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

[3]   Certain of the disclosures herein relate to matters within the knowledge of other professionals at Omni and are based on information provided by them.

Omni as Claims and Noticing Agent, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Retention Agreement.

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Omni will perform, at the request of the Clerk, the noticing and claims related services specified in the Section 156(c) Application and the Retention Agreement.  In addition, at the Debtors' request, Omni will perform such other noticing, claims, administrative, technical, and support services specified in the Section 156(c) Application and the Retention Agreement.

4.      Omni is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent and/or administrative agent in numerous chapter 11 cases in this district and other districts nationwide.

5.      Prior to the Petition Date, the Debtors provided Omni a retainer in the amount of $65,000 (the "Retainer").  Omni seeks to first apply the Retainer to all pre-petition invoices, and thereafter, to have the Retainer replenished to the original advance amount, and thereafter, to hold the Retainer under the Retention Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Retention Agreement.[4]

6.      In connection with its retention as Claims and Noticing Agent, Omni represents, among other things, the following:

> (a)      Omni is not a creditor of the Debtors;
>
> (b)      Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in

---

[4]   Prior to the filing of these chapter 11 cases, the Debtors provided Omni with an additional payment in the amount of $35,000 to replenish the Retainer to its original amount.

its capacity as Claims and Noticing Agent in these chapter 11 cases;

(c)     by accepting employment in these chapter 11 cases, Omni waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     in its capacity as Claims and Noticing Agent in these chapter 11 cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)     Omni shall not employ any past or present employee of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

(f)     Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as Claims and Noticing Agent, Omni will not intentionally misrepresent any fact to any person;

(h)     Omni shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     Omni will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Omni as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

7.     At this time, Omni is not aware of any relationship that would present a disqualifying conflict of interest.

8.     Although the Debtors do not propose to retain Omni under section 327 of the Bankruptcy Code, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, equity holders, lenders, creditors and vendors, and other parties in interest. The results of the conflict check were compiled and reviewed by Omni professionals. At this time, and as set forth in further detail herein, Omni is not aware of any connection that would present a

3

disqualifying conflict of interest.  Should Omni discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration.

9.      To the best of my knowledge and based solely upon information provided to me by the Debtors, and except as provided herein, neither Omni, nor any of its personnel, holds or represents an interest materially adverse to the Debtors' estates nor has a material connection to the Debtors, their creditors, or related parties with respect to any matter for which Omni will be employed.  Omni may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Omni serves or has served as claims and noticing agent and/or administrative agent for another chapter 11 debtor.  However, to the best of my knowledge, no such relationships are materially related to these cases.

10.     Omni has working relationships with certain of the professionals retained by the Debtors and other parties herein but such relationships are entirely unrelated to these cases.  Omni has and will continue to represent clients in matters unrelated to these cases, and Omni and its personnel may have, and will continue to have, relationships personally or in the ordinary course of its business with certain vendors, professionals, financial institutions, and other parties in interest in connection with matters unrelated to these cases.  Omni may also provide professional services to entities or persons that may be creditors or parties in interest in these cases, which services do not directly relate to, or have any direct connection with, these cases or the Debtors.

11.     Omni and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors.  Such firms engaged by Omni or its personnel may appear in this case representing the Debtors or parties in interest.  All engagements

where such firms represent Omni or its personnel in their individual capacities are unrelated to these cases.

12.    On October 16, 2019, Omni executed a contract with X-Claim Inc. ("X-Claim") whereby Omni agreed to provide X-Claim with publicly available claims register data in a downloadable format (the "Agreement").  Omni ceased providing services under the Agreement as of June 8, 2022, and, as confirmed to Omni by X-Claim, the Agreement was terminated as of June 9, 2022.

13.    Other than the disclosed contract with X-Claim, Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in the District of Delaware or elsewhere to non-client third parties.

14.    Omni has no agreement with any third-party vendor to provide claims register data.

15.    Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of the knowledge and belief, neither Omni nor any of its employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Omni is to be employed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.


Dated: May 8, 2023                              OMNI AGENT SOLUTIONS

                                                        */s/ Paul H. Deutch*

5

# EXHIBIT C

**Retention Agreement**

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of April 17, 2023, between Omni Agent Solutions, Inc. ("**Omni**") and Bittrex, Inc. (together with certain of its affiliates, the "**Company**"),[1] in preparation of, and in connection with, the Company's potential chapter 11 cases. The parties hereto agree as follows:

## Terms and Conditions

I.    SERVICES

(a)    Omni agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

(b)    The Company acknowledges and agrees that Omni will often take direction from the Company's representatives, employees, agents and/or professionals (individually, a "**Company Party**") with respect to providing Services hereunder.  The parties agree that Omni may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by a Company Party to the same extent as if such requests, advice, or information were provided by the Company.

(c)    The Company agrees and understands that Omni shall not provide the Company or any other party with legal advice.

II.    RATES

(a)    The services to be rendered by Omni will be billed at rates ranging from $40.00 to $250.00 per hour as per the rate structure attached hereto and incorporated herein by reference as **Exhibit "A"** (the "**Rate Structure**"). *Notwithstanding the foregoing, Omni has agreed to provide the Debtors with (i) a $15,000 discount towards prepetition fees (contingent upon the filing of at least one of the Company's chapter 11 cases), and (ii) a twenty (20%) percent discount on the standard hourly rates set forth below in Exhibit A.* The Company agrees to pay all fees and reasonable and documented out of pocket expenses incurred by Omni in connection with providing Services hereunder.

(b)    Rates may be adjusted annually on or after January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum.  Omni shall provide sixty (60) days prior

---

[1] To be clear, the term "Company" shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

written notice of any such proposed increases.

(c)      Omni shall be compensated monthly for services it performs on behalf of the Company during the preceding calendar month.  Invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and any orders of the bankruptcy court.

(d)      Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)      Upon execution of this Agreement, the Company shall pay Omni a retainer of $65,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount.  At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f)      The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based.  This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g)      The Company shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any Company error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h)      Payments to Omni for services rendered under the terms of this Agreement may be remitted by the Company using either or both of the following methods:

(i)      **Wire Transmission**
(Omni's wire information will be included on each monthly invoice)

(ii)      **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100

Woodland Hills, CA 91367

III.    RETENTION IN BANKRUPTCY CASE

(a)    If the Company commences one or more cases pursuant to the U. S. Bankruptcy Code (the "**Code**"), the Company shall, as soon as practicable, file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b)    If any Company chapter 11 case converts to a case under chapter 7 of the Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

IV.    CONFIDENTIALITY

(a)    Each of Omni and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b)    If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

V.    PROPERTY RIGHTS

(a)    The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.  The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of

Omni. Fees and expenses paid by the Company do not vest in the Company any rights in Omni's property. Such property is only being made available for the Company's use during and in connection with the Services provided by Omni hereunder.

(b)     Upon the Company's request at any time while this Agreement is in effect, Omni shall immediately deliver to the Company and/or the Company's retained professionals, at the Company's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

VI.     BANK ACCOUNTS

At the request of the Company and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.

VII.     COMPANY DATA

(a)     The Company is responsible for, and Omni does not verify, the accuracy of the programs, data, and other information it or any Company Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "**SOFAs and Schedules**"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all the SOFAs and Schedules filed on its behalf.

(b)     The Company agrees, represents, and warrants to Omni that before delivery of any information to Omni: (i) the Company has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c)     Any data, storage media, programs or other materials furnished to Omni by the Company may be retained by Omni until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days written notice. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Omni.

(d)     If Omni is retained pursuant to bankruptcy court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

VIII.     TERM AND TERMINATION

(a)     This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (a) bad faith, gross negligence, or willful misconduct of Omni that causes material harm to the Company's restructuring under chapter 11 of the Code, (b) the failure of the Company to pay Omni's invoices for more than sixty (60) days from the date of invoice or (c) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with the Company and/or the Company's professionals, it will not be paid.

(b)     If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, the Company shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c)     If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder.  Following payment of such amounts, Omni shall promptly provide the Company with all materials required to be returned to the Company by the terms of this Agreement and all in-process deliverables in their then-current state of completion.

(d)     If this Agreement is terminated, Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

IX.     NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

X.     INDEMNIFICATION

(a)     To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)      Omni and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)      The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)      The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI.    LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Omni's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.    GENERAL

(a)      Complete Agreement. Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b)      Severability. If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)      Modification. This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Omni.

(d)      Assignment. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)      Counterparts. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each

of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)     Force Majeure. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)     Location Services. The Company will use its best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)     Non-Solicitation. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     Independent Contractors. The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     Attorney's Fees. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

(k)     Choice of Law. The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(l)     Arbitration. Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(m)     System Improvements. Omni reserves the right to make changes in operating

procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy case.

(n)    Headers. Article and Section headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement

XIII.    NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:          Omni Agent Solutions, Inc.
                     5955 De Soto Avenue
                     Suite 100
                     Woodland Hills, CA 91367
                     Tel: (818) 906-8300
                     Attn: Brian K. Osborne, Pres. & CEO
                     Email: Bosborne@omniagnt.com

If to the Company:   Bittrex, Inc., *et al.*
                     701 5th Ave, Suite 4200
                     Seattle, WA 98104
                     Attn:   David Maria
                             General Counsel
                     Tel:    206-413-8559
                     Email: dmaria@bittrex.com

And to Counsel:      Quinn Emanuel Urquhart & Sullivan, LLP
                     Pennzoil Place
                     711 Louisiana St., Suite 500
                     Houston, TX 77002
                     Attn:   Patricia B. Tomasco, Esq.
                     Tel:    713-221-7227
                     Email: pattytomasco@quinnemanuel.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

*[The rest of this page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____
Name: Paul Deutch
Title:   Executive Vice President

Agreed and accepted this <u>26th</u> day of April 2023.

**BITTREX, INC., ET AL.**

By: _____
David Maria
General Counsel

# EXHIBIT

## "A"

DocuSign Envelope ID: 6734BB6D-D2E8-4EFB-85AD-0B7800BCBC6D

# 2023 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Analyst | $40.00 - $75.00 per hour |
| Consultants | $75.00 - $195.00 per hour |
| Senior Consultants | $200.00 - $240.00 per hour |
| Solicitation and Securities Services | $250.00 per hour |
| Technology/Programming | $85.00 - $155.00 per hour |

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE / COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Creditor Database | RATE / COST |
|---|---|
| Data storage | Under 10,000 records - No charge Over 10,000 records - .08 per Record |
| Per image storage | No charge |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $20.00 per Month |
| Usage | $.0825 per Minute |
| Call center personnel | Standard Hourly Rates |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

20

DocuSign Envelope ID: 6734BB6D-D2E8-4EFB-85AD-0B7800BCBC6D

# 2023 Rate Sheet



| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | $65.00  per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Case Docket / Claims Register | No charge |
|---|---|

| Virtual Data Rooms | Quote upon request |
|---|---|

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $200.00 per hour |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, | Standard hourly rates apply |

| Real-Time Reports | RATE / COST |
|---|---|
| Claims dashboard | No charge |
| Claim reports | No charge |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | No charge |

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |

21