**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Joint Administration Pending) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTORS TO (A) MAINTAIN A CONSOLIDATED LIST OF
CREDITORS, (B) FILE A CONSOLIDATED LIST OF THE DEBTORS' FIFTY
LARGEST UNSECURED CREDITORS, AND (C) WITHHOLD OR OMIT
CERTAIN CONFIDENTIAL INFORMATION, (II) ESTABLISHING
PROCEDURES FOR NOTIFYING THE PARTIES OF COMMENCEMENT,
AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state the following in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1.      The Debtors seek the entry of an interim order, substantially in the form attached
hereto as **Exhibit A** (the "Interim Order"), and final order, substantially in the form attached hereto
as **Exhibit B** (the "Final Order" and together with the Interim Order, the "Orders"), (a) authorizing
the Debtors to (i) maintain a consolidated list of creditors, (ii) file a consolidated list of the Debtors'
fifty largest unsecured creditors, and (iii) withhold or omit certain confidential information; (b)
establishing procedures for notifying the parties of the commencement of these chapter 11 cases
(the "Chapter 11 Cases"); and (c) granting related relief.

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification
number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and
Bittrex Malta Ltd. (1764).  The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle,
WA 98104.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rule[s]"), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 107(b) and (c), and 521 of title 11 of the United States Code (the "Bankruptcy Code"), rules 1007, 2002, 9007, and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule[s]"), and Local Rules 1001-1, 1007-2, 2002-1, and 9018-1.

## BACKGROUND

5.      The Debtors, together with their non-debtor affiliates (collectively, "Bittrex"), operate cryptocurrency exchanges for both retail and institutional customers in several jurisdictions.  Bittrex, Inc. ("BUS"), a Georgia corporation, operates Bittrex's cryptocurrency exchange for U.S. customers, whereas two foreign non-debtor affiliates operate Bittrex's cryptocurrency exchange for non-U.S. customers.  The global Bittrex platform has approximately 1.2 million customers, including over 600,000 in the United States.

6.      Debtors provided each customer with a unique user ID (the "UUID[s]"), which (a) is information not available to other third parties; (b) is visible to a customer only after it has

completed the process to login to its Bittrex account; (c) is not needed by customers to login to their Bittrex accounts; and (d) is not used for the identity verification process related to the Bittrex accounts.

7.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* ("Hengel Declaration" or "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference here.[2]

8.     As described in more detail in the Hengel Declaration, the Debtors commenced these Chapter 11 Cases for the purpose of protecting their client base in the context of the orderly wind down of Bittrex's U.S. and Malta operations, a process that contemplates distributing to the Debtors' customers all of the cryptocurrency associated with their accounts.  The Debtors seek to complete the previously announced wind down of its U.S. business and implement the wind down of its Malta business, and accomplish, as soon as practicable, a comprehensive process that will (a) maximize value for the Debtors' creditors (including its customers) and other stakeholders; (b) leave intact Bittrex's non-U.S. business operations for the benefit of their several hundred thousand customers; and (c) to the extent necessary, fairly separate the non-U.S. operations.  Concurrent with the filing of this Motion, the Debtors have filed their proposed chapter 11 plan, which provides, among other things, that the Debtors' customers entitled to distributions will receive under the plan a 100 percent like-kind cryptocurrency distribution.  This means that with respect to customers, they will be entitled to access the Bittrex platform and withdraw cryptocurrencies

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

consistent with the plan and with their allowed claims.  The Debtors do not intend to monetize cryptocurrencies reserved for like-kind distributions to holders of allowed customer claims, and any change in the value of such assets following the Petition Date would be borne by the Debtors' customers.

9.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and no official committees have been appointed or designated.

## BASIS FOR RELIEF

I.    **Cause Exists to Authorize the Debtors to Maintain the Creditor Matrix in Lieu of Submitting a Formatted Mailing Matrix**

10.    Section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(a)(1) and Local Rule 1007-2(a) require a debtor in a voluntary chapter 11 case to file a list containing the name and complete address of each creditor.  Local Rule 1007-2(a) specifies that in "voluntary cases with multiple debtors and that are subject to the requirement of Local Rule 2002-1(f) to retain a claims and noticing agent, the debtors may file consolidated lists of creditors for the lists required in Bankruptcy Rule 1007."  Del. Bankr. L.R. 1007-2(a).  Local Rule 2002-1(f)(v) requires that each Debtor, or its duly appointed claims agent, "[m]aintain a separate claims register and separate creditor mailing matrix for each debtor in jointly administered cases."  Del. Bankr. L.R. 2002-1(f)(v).  Local Rule 1001-1(c) permits modifications of the Local Rules "in the interest of justice."  Del. Bankr. L.R. 1001-1(c).

11.    The Debtors respectfully submit that the filing and maintaining of a single

consolidated list of creditors (the "Creditor Matrix"), in lieu of the filing and maintaining of a separate list of creditors for each Debtor, is warranted.  The Debtors, in consultation with Omni Agent Solutions, Inc., their proposed claims and noticing agent (the "Claims and Noticing Agent"),[3] have determined that time and resource efficiencies can be obtained by preparing, filing, and maintaining a consolidated Creditor Matrix.  Requiring, instead, that the Debtors segregate and convert their computerized records to a debtor-specific creditor matrix format would be an unnecessarily burdensome task, and it would increase the risk of error in connection with the preparation of separate lists of creditors.

12.     The Debtors, working with the Claims and Noticing Agent, have prepared the Creditor Matrix in electronic format.  To ensure that no parties in interest are prejudiced, the Debtors will make the Creditor Matrix available in readable electronic format to any party in interest who so requests (or in non-electronic format at such requesting party's sole cost and expense).

## II.    Cause Exists to Authorize the Debtors to File a Single Consolidated List of the Debtors' Fifty Largest Unsecured Creditors

13.     Bankruptcy Rule 1007(d) provides that a debtor shall file "a list containing the name, address, and claim of the creditors that hold the 20 largest unsecured claims, excluding insiders." Fed. R. Bankr. P. 1007(d).   The purpose of this list is to enable the United States Trustee for the District of Delaware (the "U.S. Trustee") to evaluate the types and amounts of unsecured claims against a debtor and thus identify potential candidates to serve on an official committee of

---

[3]     On May 8, 2023, concurrently with this Motion, the Debtors filed the *Application for Entry of an Order Appointing Omni Agent Solutions as Claims and Noticing Agent, Effective as of the Petition Date*.  If such application is granted, the Claims and Noticing Agent will, among other things: (a) assist with maintaining of the Creditor Matrix; and (b) complete the mailing or emailing, as applicable, of notices to the creditors on the Creditor Matrix.

unsecured creditors appointed in a debtor's case under section 1102 of the Bankruptcy Code. *See*, *e.g.*, *In re Dandy Doughboy Donuts, Inc.*, 66 B.R. 457, 458 (Bankr. S.D. Fla. 1986) ("The purpose of the separate list of 20 largest creditors required by this provision in the rules is to enable the [United States Trustee] to identify members and . . . appoint immediately an unsecured creditors' committee in compliance with 11 U.S.C. § 1102(a)(1).").

14.     The Debtors request authority to file their single consolidated list of their fifty largest unsecured creditors ("Top 50 Creditors List"). Because the Debtors' significant unsecured creditors are included in their Top 50 Creditors List, it will provide the U.S. Trustee with a sufficiently clear picture of the Debtors' unsecured creditor constituency and, in fact, will aid the U.S. Trustee in its efforts to communicate with these creditors. Debtors Desolation Holdings LLC and Bittrex Malta Holdings Ltd. both have fewer than 20 unsecured creditors so that filing separate lists of the top 20 unsecured creditors for each Debtor would be of limited utility. Moreover, authorizing the filing of the Top 50 Creditors List would avoid compiling separate lists for each individual Debtor, which would consume the time and resources of the Debtors and their advisors.

## III.    Cause Exists to Protect Confidential Information of Customers Pursuant to Section 107(b)(1) of the Bankruptcy Code

15.     Section 107(b)(1) of the Bankruptcy Code requires bankruptcy courts, on request of a party in interest, to "protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. §§ 107(b)(1). Further, under Bankruptcy Rule 9018, upon motion, "the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018.

16.     The Debtors respectfully submit that cause exists under section 107(b)(1) of the Bankruptcy Code to authorize the Debtors to omit customers' names, physical addresses and email

addresses, any other contact information in any paper filed or to be filed with the Court or made

publicly available in these Chapter 11 Cases, including, but not limited to, the Creditor Matrix, the

Top 50 Creditors List, and schedules and statements (the "Filing[s]").

17.     The Debtors have operated a trading platform catering to Debtors' customers in

various forms of cryptocurrency.  Debtors' business is grounded on the number of customers

trading on the platform.  As such, the Debtors have maintained in strict confidence their customer

list, which is an important and valuable asset of the Debtors' estates.  Third parties have shown

interest in a potential acquisition of the Debtors' customer list, but the related discussions have

been paused and, at this juncture, it is unclear whether they will or not resume in the future.  As

Judge John T. Dorsey recently stated in a case relating to the bankruptcy of a cryptocurrency

exchange: "[I]t goes without saying that a customer list in any bankruptcy case is something that

is protected by 107(b) as a trade secret.  Companies hold those things very closely and don't want

them disclosed."  *In re FTX Trading, Ltd.*, No. 22-11068 (JDT) (Bankr. D. Del. Jan. 13, 2023),

D.I. 489 (Jan. 11, 2023 Hr'g Tr. at 103:1-5).

18.     The Debtors respectfully submit that, by authorizing the omission of customers'

identifying information in the Filings, the confidentiality of their customer list is protected.  In lieu

of these data, in the Filings, the Debtors will provide the related UUID for each customer.  By

including the UUIDs, Debtors' customers will be able to easily and quickly identify their inclusion

in any relevant Filings of these Chapter 11 Cases, and without necessarily depending on the Claims

and Noticing Agent serving notices to the customers' physical or email addresses, which may not

be available to the Debtors or have changed since the last time customers provided such

information.

19.     Moreover, to ensure to the maximum extent possible that each customer in these

Chapter 11 Cases receives the relevant notices, the Debtors will instruct the Claims and Noticing Agent to serve customers at their physical addresses or email addresses, as applicable.    The Debtors will also make available versions of the Creditor Matrix, Top 50 Creditors List, and any other applicable Filings that contain the names and other requested customers' information to (a) the Court, the U.S. Trustee and counsel to any official committee appointed in these Chapter 11 Cases; and (b) upon Court order, to any other party.

## IV.    Cause Exists to Protect Confidential Information Pursuant to Sections 107(c) and 105(a) of the Bankruptcy Code

20.    It is undeniable that "identity theft is a world-wide problem." *In re Endo Int'l plc*, No. 22-22549 (JLG), 2022 WL 16640880, at \*10 (Bankr. S.D.N.Y. Nov. 2, 2022) (authorizing redactions of creditors' names and other identifying information).[4]  The cryptocurrency industry is no stranger to the risks posed by identity theft and related scams.  In the bankruptcy context, the pending cryptocurrency case *In re Celsius Network LLC* ("Celsius") (the "Celsius Case") is exemplative.  Pursuant to section 107(c) of the Bankruptcy Code, the court required the disclosure of (a) the names of individuals (including, among others, debtors' customers and employees); and (b) the names, physical addresses, and email addresses of business entities.  *In re Celsius Network LLC*, 644 B.R. 276, 295 (Bankr. S.D.N.Y. 2022).  Following this ruling and the public disclosure of customer information, Celsius's customers were repeatedly targeted by bad actors aiming to obtain wallet addresses and other account information useful to steal from customers.[5]

21.    In view of the risks that public disclosure of personal data entails, courts in this

---

[4]    Further, in *In re Endo Int'l plc*, the court acknowledged that  the risk of stalking and physical injuries to individuals whose personal data is made publicly available is "real," and therefore there is a "good reason" for authorizing redactions of their data in the bankruptcy filings.  2022 WL 16640880, at \*10.

[5]    *See* Notices of Phishing Attempts, *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y.), D.I.s 1527, 1681, 1904, 1992, 2082.

district have acknowledged that personal information of individuals, including the names of customers, needs protection.  In *In re FTX Trading, Ltd.*, Judge Dorsey, referred to the definition of "means of identification" under 18 U.S.C. 1028(d), which is identical to section 107(c), and noted: "[I]f you look at 128(d) [sic], it says that the information includes names, numbers, or any combination of those two that would allow the identification of an individual. So, certainly, the Criminal Code recognizes that disclosure of a name could result in the identification of an individual and if that individual needs protecting, we need to make sure that that is happening." No. 22-11068 (JDT) (Bankr. D. Del. Jan. 13, 2023), D.I. 489 (Jan. 11, 2023 Hr'g Tr. at 103:24-104:5) (emphasis added).  In *In re Clover Techs. Grp., LLC*, Judge Karen B. Owens stated: "I do find that names and/or addresses are means of identification. . . . To me it is common sense.  I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by way of the court's electronic case filing system and, of course, the claims agent's website."  No. 19-12680 (KBO) (Bankr. D. Del. Jan. 24, 2020), D.I. 146 (Jan. 22, 2020 Hr'g Tr. at 24:15-25).  In *In re Forever 21, Inc.*, Judge Gross noted that "[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld."  19-12122 (KG) (Bankr. D. Del. Dec. 20, 2019), D.I. 605 (Dec. 19, 2019 Hr'g Tr. at 60:22–25).

22.    In the present case, however, the protection afforded by section 107(c) of the Bankruptcy Code—as implemented by omitting identifying information in the Filings—should not be limited to information pertaining to individuals.  It should also be extended to those entities that are subject to a higher risk of injury to their property—i.e., entity customers.  Bad actors can easily find online information relating to employees or directors of entity customers (e.g., through LinkedIn and other social media), which makes this type of customers an appealing target, similar

to individual customers.  The risk related to the disclosure of names and other identifying information of customers, employees, and other third parties is not merely speculative; it is actual.  Indeed, the Celsius Case shows how criminals exploited the publication of customers' names in attempts to defraud customers and cause injury to their property.  Regarding the risk of stalking and physical injury to individuals affected by the publication of their personal information, in at least one recent chapter 11 case, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address, which had not been publicly available until then, and forced the employee to change addresses again.  *See In re Charming Charlie Holdings, Inc.*, 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019), D.I. 4 (describing incident occurred in Charming Charlie's prior chapter 11 cases).  Other courts have since expressed serious privacy and safety concerns, acknowledging that the threat to the individuals involved is real.  *See*, e.g., *In re Forever 21, Inc.*, No. 19- 12122 (KG) (Dec. 20, 2019), D.I. 605 (Dec. 19, 2019 Hr'g Tr. at 61:1–8) ("In addition, the Court's concern with the disclosure of addresses is not speculative.  The Court, for example, recently had a situation in which a former spouse in an abuse situation was able to locate his former spouse through the creditors' matrix.  The Court has serious concerns with requiring disclosure of home addresses of employees and the violation of privacy and safety concerns.  The threat to the employees is real.").

23.     In these Chapter 11 Cases, the risk of identity theft or injury to the Debtors' customers, as well as to other creditors and employees who are natural persons outweighs the presumption in favor of public access to judicial records and papers, or concerns of judicial efficiency.  *See In re Continental Airlines*, 150 B.R. 334, 340–41 (D. Del. 1993).  The Celsius Case demonstrates how the Debtors' customers would face a real risk of becoming the victims of

identity theft and other criminal conduct if their names and other identifying information were disclosed in these Chapter 11 Cases. There is little to no benefit related to the public disclosure of customers' identifying information, also considering that the Debtors commenced these Chapter 11 Cases for the purpose of allowing customer withdrawals, consistent with Bittrex's terms of service and applicable law, within an orderly wind down of Bittrex's U.S. and Malta operations. There is also minimal benefit, if any, in publishing the personal information of other creditors and third parties. These benefits, however, are clearly outweighed by the financial and safety risks posed to Debtors' customers, other individual creditors and employees if their identifying information were become public and at the mercy of bad actors.

24.    In addition, the European General Data Protection Regulation (the "EU GDPR"), the United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (the "UK GDPR," and, together with the EU GDPR, the "GDPR"), and similar laws in other relevant jurisdictions, impose significant constraints on the processing (which includes the transferring or disclosing) of information relating to individuals (including names, home and email addresses, and business contacts) (the "Personal Data"). The GDPR has an extraterritorial reach. It applies to the processing of Personal Data in the context of an establishment of a controller[6] or processor[7] in the European Economic Area (the "EEA") or the United Kingdom (the "UK"), regardless of whether the processing takes place in the EEA or the UK. Furthermore, in some circumstances, organizations outside the EEA/UK are subject to the GDPR when the process of

---

[6]    According to the General Data Protection Regulation (EU) 2016/679, art. 4(7), and the United Kingdom Data Protection Act 2018, section 3(6), "controller" means "the natural or legal person . . . which, alone or jointly with others, determines the purposes and means of the processing of personal data . . . ."

[7]    According to the General Data Protection Regulation (EU) 2016/679, art. 4(8), and the United Kingdom Data Protection Act 2018, section 3(6), "processor" means "a natural or legal person . . . which processes personal data on behalf of the controller."

Personal Data relates to individuals located in the EEA or UK.  Violators of the GDPR risk substantial penalties.[8]

25.    The processing of information includes disclosing it to others.  The GDPR may apply to the Debtors because (a) Debtor Bittrex, Inc. ("BUS") has thousands of individual customers who reside in a EEA member state or in the UK, or who are otherwise citizens of those jurisdictions;[9] and (b) Debtor Bittrex Malta Ltd. is a EEA entity required, in principle, to protect the Personal Data of its individual customers, regardless of its customers' nationality or residence.

26.    Furthermore, BUS's privacy policy for its customers (the "Privacy Policy") specifically assured them that BUS would protect their personal data.  Publicizing their personally identifying information in a court filing, without omitting it, would run contrary to the letter and spirit of BUS's contractual obligations under its Privacy Policy.

27.    Accordingly, pursuant to sections 105(a) and 107(c) of the Bankruptcy Code, the Debtors respectfully submit that cause exists to authorize the Debtors to omit, in any Filing with the Court or made publicly available in these Chapter 11 Cases, (a) customers' names, physical addresses, email addresses and any other contact information; and (b) the names, physical addresses, email addresses, and any other contact information of other creditors and employees (i)

---

[8]    If an organization is found to have breached the EU GDPR by unlawfully processing Personal Data, the organization may be fined up to the higher of €20,000,000 or 4% of worldwide annual turnover—i.e., total gross annual revenues—of the preceding financial year.  *See* General Data Protection Regulation (EU) 2016/679, art. 83(5).  Similarly, pursuant to the UK GDPR, an unlawful processing of Personal Data may entail a fine against the organization up to the higher of £17,300,000 or 4% of worldwide annual turnover—i.e., total gross annual revenues—of the preceding financial year.  *See* United Kingdom Data Protection Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019).  As Judge Owens observed in *In re Clover Techs. Grp., LLC*, "[t]he danger for these fines, which are enormous . . ., are not something that  . . . the estate should bear . . . ."  *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 24, 2020), D.I. 146 (Jan. 22, 2020 Hr'g Tr. at 23:19-21).

[9]    According to Bittrex's compliance and know-your-customer procedures, a customer is allocated to the U.S. business—and therefore creditors of the Debtors—if it has certain ties with the United States including, but not limited to, U.S. nationality (irrespective of the customer's country of residence) or U.S. residence (irrespective of the customer's nationality).

who are natural persons and (ii) reside in the United States or are otherwise protected by the GDPR. The proposed omission is a measure that prevents customers' (but also other creditors' and employees') exposure to bad actors aiming to steal (or cause other injury). Furthermore, the inclusion of the customer UUIDs in the Filings, compared to the disclosure of customers' names and other identifying information, sufficiently protects customers from the abovementioned risks because the UUIDs are not data that customers typically share use on social media, or are normally included in records that are published online. Absent the requested relief, the disclosed information can be used to perpetrate identity theft and other scams aiming to injure the property of the targeted victims, or to locate and subject individuals to harassment, stalking or other violent acts. These are results that sections 105(a) and 107(c) of the Bankruptcy Code allow the Court to prevent. *See In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 756 n.23 (D. Del. 2018) ("[T]he principle that access may be denied where court files could potentially become a vehicle for improper purposes . . . is consistent with § 107(c)."); *In re Howes*, 563 B.R. 794, 811 (D. Md. 2016) ("§ 105(a) of the [Bankruptcy] Code confers discretion on the Bankruptcy Court to take action to protect creditors, where necessary."). In addition, the Debtors risk violating the GDPR, exposing themselves to potential civil liability and significant financial penalties.

28.     The Debtors will instruct the Claims and Noticing Agent to serve customers, as well as the other relevant creditors and third parties who are natural persons at their physical or email addresses to ensure, to the maximum extent possible, that they receive relevant notices in these Chapter 11 Cases. The Debtors will make available versions of the Creditor Matrix, Top 50 Creditors List, and any other applicable Filings that contain the names and other requested customers' information to (a) the Court, the U.S. Trustee and counsel to any official committee appointed in these Chapter 11 Cases; and (b) upon Court order, to any other party.

## V.    The Court May Establish Procedures for Providing Notice to Creditors

29.    As stated above, by a separate application, the Debtors are seeking authority to retain the Claims and Noticing Agent.  The Debtors propose that the Claims and Noticing Agent undertake all mailing or emailing, as applicable, directed by the Court, the U.S. Trustee, or as required by the Bankruptcy Code.  The Claims and Noticing Agent's assistance with mailing and emailing, as applicable, maintaining creditor lists, and preparing notices will ease the administrative burden on the Court and the U.S. Trustee.

30.    To assist the Claims and Noticing Agent with these tasks, the Debtors respectfully request that the Court establish the procedures outlined herein. Bankruptcy Rule 2002(a)(1) provides that the clerk (or other person directed by the Court) must give the debtor, the U.S. Trustee, all creditors, and any indenture trustee at least twenty-one days' notice by mail of the meeting of creditors under section 341 of the Bankruptcy Code.  In accordance with a concurrently filed motion,[10] the Debtors seek authority for the Claims and Noticing Agent to serve the notice of commencement of these Chapter 11 Cases (the "Notice of Commencement") by email to creditors, and will serve in that manner, if granted.

31.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). In addition to emailing the Notice of Commencement, the Debtors propose publishing the Notice of Commencement, as soon as reasonably practicable, on the website maintained by the Claims and Noticing Agent at https://omniagentsolutions.com/Bittrex.  The Debtors believe that such publication of the Notice of Commencement is sufficient to provide notice to persons who did not otherwise receive notice by email or mail.

---

[10]    *See*, *supra*, n.3.

32.     These proposed procedures will ensure that the Debtors' creditors receive prompt notice of the commencement of these Chapter 11 Cases and of the meeting of creditors. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). The Debtors submit that implementing these procedures is within the Court's equitable powers under section 105(a) of the Bankruptcy Code. Accordingly, the Debtors request that the Court approve the foregoing as providing sufficient notice of the commencement of these Chapter 11 Cases.

## **NOTICE**

33.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of Delaware; (b) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lender under the Debtor's post-petition financing facility; (d) counsel to the Debtors' non-debtor affiliate Bittrex Global GmbH; (e) counsel to the Debtor's non-debtor affiliates RBR Holdings, Inc., and Aquila Holdings Inc.; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first-day" relief, within two business days of the Hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

34.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, (b) enter the Final Order, substantially in the form attached hereto as **Exhibit B**, and (c) grant such other and further relief as is just and proper.

Dated: May 8, 2023
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert S. Brady*

Robert S. Brady (Delaware Bar No. 2847)
Kenneth Enos (Delaware Bar No. 4544)
Joshua Brooks (Delaware Bar No. 6765)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: jbrooks@ycst.com

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Susheel Kirpalani *(pending pro hac vice)*
Patricia B. Tomasco *(pending pro hac vice)*
Daniel Holzman *(pending pro hac vice)*
Alain Jaquet *(pending pro hac vice)*
Razmig Izakelian *(pending pro hac vice)*
Valerie Ramos *(pending pro hac vice)*
Joanna D. Caytas *(pending pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: valerieramos@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**PROPOSED COUNSEL FOR THE DEBTORS**

## Exhibit A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. _____ |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN A
CONSOLIDATED LIST OF CREDITORS, (B) FILE A CONSOLIDATED LIST OF THE
DEBTORS' FIFTY LARGEST UNSECURED CREDITORS, AND (C) WITHHOLD OR
OMIT CERTAIN CONFIDENTIAL INFORMATION, (II) ESTABLISHING
PROCEDURES FOR NOTIFYING THE PARTIES OF COMMENCEMENT,
AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Interim Order") (a) authorizing the Debtors to (i) maintain a consolidated list of creditors, (ii) file a consolidated list of the Debtors' fifty largest unsecured creditors, and (iii) withhold or omit certain confidential information; (b) establishing procedures for notifying the parties of the commencement of these chapter 11 cases (the "Chapter 11 Cases"); and (c) granting related relief; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, entered February 29, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing on this Motion shall be held on _____, **2023 at __:__ __.m (prevailing Eastern Time)**. Any objections or responses to entry of the proposed Final Order shall be filed on or before **__:__ __.m. (prevailing Eastern Time)** on _____, 2023 and served on the following parties: (a) proposed co-counsel to the Debtors, (i) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave 22nd floor, New York, NY 10010, Attn: Susheel Kirpalani (susheelkirpalani@quinnemanuel.com); Patricia B. Tomasco (pattytomasco@quinnemanuel.com), Daniel Holzman (danielholzman@quinnemanuel.com), and qe-bittrex@quinnemanuel.com, and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady (rbrady@ycst.com), Kenneth Enos (kenos@ycst.com), and Joshua Brooks (jbrooks@ycst.com); (b) counsel to any

statutory committee appointed in these Chapter 11 Cases; (c) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter (richard.schepacarter@usdoj.gov); and (d) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  If no objections are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.     The requirements of Local Rules 1007-2(a) and 2002-1(f)(v) that separate mailing matrices be submitted for each Debtor are permanently are waived, and the Debtors are authorized, but not directed, to submit a consolidated Creditor Matrix.

4.     The Debtors shall cause the consolidated Creditor Matrix to be made available in readable electronic format (or in non-electronic format at such requesting party's sole cost and expense) upon reasonable request by parties in interest.

5.     The Debtors are authorized to file a consolidated list of their fifty largest unsecured creditors.

6.     The Debtors shall serve the Notice of Commencement via-email on (a) customers that (i) have not designated a mailing address under Bankruptcy Rule 2002(g)(1) or 5003(e), (ii) do not request to be served hard copies by mail, and (iii) have a valid email address on file with the Debtors; and (b) non-customer individual creditors that (i) have not designated a mailing address under Bankruptcy Rule 2002(g)(1) or Rule 5003(e), (ii) do not request to be served hard copies by mail, and (iii) have a valid email address on file with the debtors, but no physical address information.  The Debtors shall serve all other creditors via mail.  The Debtors shall also publish the Notice of Commencement as soon as reasonably practicable on the website maintained by the Debtors' Claims and Noticing Agent.

7.     Pursuant to section 107(b)(1) of the Bankruptcy Code, the Debtors are authorized,

on an interim basis, to omit customers' names, physical addresses, email addresses, and any other customers' contact information from any Filings with the Court or made publicly available in these Chapter 11 Cases.  In the Filings, the Debtors will include the related UUID for each relevant customer.

8.  Pursuant to sections 105(a) and 107(c)(1) of the Bankruptcy Code, the Debtors are authorized, on an interim basis, to omit, from any Filings with the Court or made publicly available in these Chapter 11 Cases, (a) customers' names, physical addresses, email addresses, and any other customers' contact information; and (b) omit the names, physical addresses, email addresses, and any other contact information of other creditors and employees who are natural persons and reside in the United States or are otherwise protected by the GDPR.  In the Filings, the Debtors will include the related UUID for each relevant customer.

9.  The Debtors shall provide versions of the Creditor Matrix, the Top 50 Creditors List, and any other Filings containing the names and other omitted information of customers, other creditors, and employees to (a) upon request, the U.S. Trustee and any official committee appointed in these Chapter 11 Cases, and (b) upon further order of the Court, any other party.

10.  Upon request of a party in interest, the Court may, upon a showing of good cause, release some or all of the information that is being withheld or omitted pursuant to the authority granted by this Interim Order.  All parties' rights in this regard are reserved

11.  Notwithstanding anything to the contrary in the order relating to the retention of a claims agent, or any Local Rules or Bankruptcy Rules, the Claims and Noticing Agent is authorized, on an interim basis, to (a) suppress from the claims register (i) the names, physical addresses, email addresses, and any other contact information of the Debtors' customers, and (ii) the names, physical addresses, email addresses, and any other contact information of other

creditors and employees who are natural persons and reside in the United States or are otherwise protected by the GDPR; and (b) file affidavits of service omitting the (i) the names, physical addresses, email addresses, and any other contact information of the Debtors' customers, and (ii) the names, physical addresses, email addresses, and any other contact information of other creditors and employees who are natural persons and reside in the United States or are otherwise protected by the GDPR, provided that the Claims and Noticing Agent shall serve the Debtors' customers, other creditors and employees at their physical addresses and email addresses, as necessary.

12.     To the extent a party in interest files a document on the docket in these Chapter 11 Cases that is required to be served on creditors whose information has been withheld or omitted pursuant to this Interim Order, such party in interest should contact counsel for the Debtors who shall work in good faith, with the assistance of their Claims and Noticing Agent, to effectuate the service on such party's behalf.

13.     The Debtors and the Claims and Noticing Agent are authorized and empowered to execute and deliver such documents, and to take and performs all actions necessary to implement and effectuate the relief granted in the this Interim Order.

14.     The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the interpretation or implementation of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Desolation Holdings LLC, *et al.*,[1] | Case No. 23-10597 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. _____ |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN A CONSOLIDATED LIST OF CREDITORS, (B) FILE A CONSOLIDATED LIST OF THE DEBTORS' FIFTY LARGEST UNSECURED CREDITORS, AND (C) WITHHOLD OR OMIT CERTAIN CONFIDENTIAL INFORMATION, (II) ESTABLISHING PROCEDURES FOR NOTIFYING THE PARTIES OF COMMENCEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Final Order") (a) authorizing the Debtors to (i) maintain a consolidated list of creditors, (ii) file a consolidated list of the Debtors' fifty largest unsecured creditors, and (iii) withhold or omit certain confidential information; (b) establishing procedures for notifying the parties of the commencement of these chapter 11 cases (the "Chapter 11 Cases"); and (c) granting related relief; and upon the First Day Declaration; and upon the Court having entered the Interim Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, entered February 29, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

having found that venue of this proceeding and the Motion in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b);

and this Court having found that proper and adequate notice of the Motion and the relief requested

therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that,

except as otherwise ordered herein, no other or further notice is necessary; and objections (if any)

to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having

been held to consider the relief requested in the Motion and upon the record of the hearing and all

of the proceedings had before this Court; and this Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors;

and that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1.     The Motion is granted on a final basis as set forth herein.

2.     The requirements of Local Rules 1007-2(a) and 2002-1(f)(v) that separate mailing

matrices be submitted for each Debtor are permanently waived, and the Debtors are authorized,

but not directed, to submit a consolidated Creditor Matrix.

3.     The Debtors shall cause the consolidated Creditor Matrix to be made available in

readable electronic format (or in non-electronic format at such requesting party's sole cost and

expense) upon reasonable request by parties in interest.

4.     The Debtors are authorized to file a consolidated list of their fifty largest unsecured

creditors.

5.     Pursuant to section 107(b)(1) of the Bankruptcy Code, the Debtors are authorized,

on an final basis, to omit customers' names, physical addresses, email addresses, and any other

customers' contact information from any Filings with the Court or made publicly available in these Chapter 11 Cases.  In the Filings, the Debtors will include the related UUID for each relevant customer.

6.       Pursuant to sections 105(a) and 107(c)(1) of the Bankruptcy Code, the Debtors are authorized, on a final basis, to omit, from any Filings with the Court or made publicly available in these Chapter 11 Cases, (a) customers' names, physical addresses, email addresses, and any other customers' contact information; and (b) omit the names, physical addresses, email addresses, and any other contact information of other creditors and employees who are natural persons and reside in the United States or are otherwise protected by the GDPR.  In the Filings, the Debtors will include the related UUID for each relevant customer.

7.       The Debtors shall provide versions of the Creditor Matrix, the Top 50 Creditors List, and any other Filings containing the names and other omitted information of customers, other creditors, and employees to (a) upon request, the U.S. Trustee and any official committee appointed in these Chapter 11 Cases, and (b) upon further order of the Court, any other party.

8.       Upon request of a party in interest, the Court may, upon a showing of good cause, release some or all of the information that is being withheld or omitted pursuant to the authority granted by this Final Order.  All parties' rights in this regard are reserved

9.       Notwithstanding anything to the contrary in the order relating to the retention of a claims agent, or any Local Rules or Bankruptcy Rules, the Claims and Noticing Agent is authorized, on a final basis, to (a) suppress from the claims register (i) the names, physical addresses, email addresses, and any other contact information of the Debtors' customers, and (ii) the names, physical addresses, email addresses, and any other contact information of other creditors and employees who are natural persons and reside in the United States or are otherwise

protected by the GDPR; and (b) file affidavits of service omitting the (i) the names, physical addresses, email addresses, and any other contact information of the Debtors' customers, and (ii) the names, physical addresses, email addresses, and any other contact information of other creditors and employees who are natural persons and reside in the United States or are otherwise protected by the GDPR, provided that the Claims and Noticing Agent shall serve the Debtors' customers, other creditors and employees at their physical addresses and email addresses, as necessary.

10.     To the extent a party in interest files a document on the docket in these Chapter 11 Cases that is required to be served on creditors whose information has been withheld or omitted pursuant to this Final Order, such party in interest should contact counsel for the Debtors who shall work in good faith, with the assistance of their Claims and Noticing Agent, to effectuate the service on such party's behalf.

11.     The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Final Order.

12.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Final Order.