## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Bittrex, Inc.,[1] | Case No. 23-10598 (BLS) |
| Wind Down Entity. |  |

### PLAN ADMINISTRATOR'S OBJECTION TO CLAIM C598-1688 FILED BY ANDREW BARTON PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007

Pursuant to sections 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), David Maria, as plan administrator (the "Plan Administrator") in the chapter 11 cases of the above-captioned debtors and each of their debtor affiliates (collectively, the "Debtors" or the "Wind Down Entity"), through undersigned counsel, hereby files this objection (the "Objection") to Claim No. C598-1688 filed by Andrew Barton ("Mr. Barton" and the "Barton Claim"). Despite never having deposited money or cryptocurrency in his account, Mr. Barton filed a claim for over $6 million. The Plan Administrator therefore requests entry of the Proposed Order attached hereto as **Exhibit A**, disallowing the Barton Claim.

### JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rules 7008 and Rule 9013-1(f) of the Local Rules of Bankruptcy

---

[1]    The last four digits of the Wind Down Entity's federal tax identification number are 0908. The mailing and service address of the Wind Down Entity is 140 Lakeside Avenue #162, Seattle, WA 98122.

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

**BACKGROUND**

I.      **The Bankruptcy Cases and Bar Date**

4.      On May 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  Prior to the Petition Date through the Effective Date of the Plan (defined below), the Debtors managed and operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

5.      Additional factual background relating to the Debtors' businesses, capital structure, and circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Evan Hengel, Co-Chief Restructuring Officer of the Debtors in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 11] (the "First Day Declaration").

6.      On May 24, 2023, the Debtors filed the *Motion of Debtors for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date* (the "Bar Date

Motion") [D.I. 65], which the Court granted on June 7, 2023, setting August 31, 2023 as the general bar date for filing proofs of claim (the "General Bar Date").  [D.I. 107.]

7.      On June 5, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I.s 85–92] (collectively, the "Schedules").

8.      On June 14, 2023, and June 23, 2023, the Debtors filed their amended schedules of assets and liabilities and statements of financial affairs [D.I.s 7–8 filed in Case No. 23-10598-BLS; D.I. 129 filed in Case No. 23-10597-BLS; D.I.s 142–143 filed in Case No. 23-10597-BLS] (collectively, the "Amended Schedules").

9.      In accordance with the Bar Date Order, the Debtors engaged in extensive noticing of the Bar Dates to provide notice to known and unknown creditors and customers.  Through Omni Agent Solutions ("Omni"), the Debtors' Court-appointed claims and noticing agent, the Debtors promptly served notice of the bar date on all creditors and customers, additionally providing the Debtors' customers with a customized Customer Proof Of Claim Form.  [D.I. 201.]  The Debtors further published the *Notice of Deadlines for Filing of Proofs of Claim* in CoinDesk's The Protocol Email Newsletter on June 14, 2023, June 21, 2023, June 28, 2023; in the Financial Times on June 16, 2023; in the Times of Malta on June 16, 2023; and in The Wall Street Journal on June 15, 2023.  [D.I. 187.]

10.     On October 31, 2023, the Court entered its order [D.I. 517] (the "Confirmation Order") confirming the *Amended Chapter 11 Plan of Liquidation of Desolation Holdings LLC and its Debtor Affiliates* (the "Plan").[2]

11.     On November 15, 2023, the Debtors filed a *Notice of Effective Date* [D.I. 563],

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

setting the effective date to the same day (the "Effective Date").  As set forth in the Confirmation Order, as of the Effective Date, all Wind Down Assets vested in the Wind Down Entity, and David Maria was appointed to serve as the Plan Administrator managing the Wind Down Entity.  *See* Confirmation Order at ¶¶ 17.G, 52.

12.     On February 27, 2024, the Court entered the Final Decree Closing Certain of the Chapter 11 Cases [D.I. 1068].  The case of Bittrex, Inc., Case No. 23-10598, remains open.

13.     The Plan Administrator is continuing the claims reconciliation process and the wind down of the business operations and affairs of the Wind Down Entity.

## II.    The Barton Claim

### A.  Mr. Barton's Contacts with the Debtors

14.     Mr. Barton opened an account with BUS on September 25, 2020 (the "Barton Account"), and he accepted the BUS terms of service on the same day.  Mr. Barton never completed the KYC requirements.  The Barton Account never had any deposits, withdrawals, orders or balance.  The balance in the Barton Account was $0.00 as of the Petition Date.

### B.  Claim C598-1688

15.     On November 28, 2023, Mr. Barton filed Claim C598-1688 against Bittrex, Inc.  He asserts a claim of $5,000,000 in fiat and cryptocurrency in amounts of 10 BTC and 100 ETH, with current market value of $1,078,122.50 and value as of the Petition Date of $463,202.  Mr. Barton does not state the basis of the Claim.  Mr. Barton signed the proof of claim listing his title as "President" of Table Rock Management LLC.  Above his signature, he checked the box "I am a guarantor, surety, endorser, or other codebtor.  Bankruptcy Rule 3005."

31503875.2

## **OBJECTIONS**

### I.    **The Barton Claim Should be Disallowed as a Late-Filed Claim**

16.    The Bar Date Order established August 31, 2023 as the as the deadline for all non-governmental entities holding or wishing to assert a claim against the Debtors that arose before the Petition Date (the General Bar Date).  The Debtors' noticing agent, Omni, provided notice of the Bar Date Order in accordance with the procedures outlined therein.

17.    Mr. Barton filed his claim on November 28, 2023, which is nearly three months past the General Bar Date.  Mr. Barton did not seek leave of the Court to file a late claim and did not attempt to justify in any way the lateness of his claim.

18.    Even if Mr. Barton was eligible to file a claim under an extended deadline pursuant to Bankruptcy Rule 3005—which he is not—that deadline has also long expired.  Bankruptcy Rule 3005 allows eligible entities to file a claim 30 days after a creditor has not filed a claim by the applicable deadline, in this case, the General Bar Date.  *See* Fed. R. Bankr. P. 3005(a) and 3003(c)(3).  Mr. Barton has filed his Claim on November 28, 2023, which is nearly three months after the General Bar Date.

19.    The Plan Administrator objects to the late-filed Barton Claim because the Claim: (a) arose before the Petition Date; (b) was subject to the General Bar Date; and (c) was filed after both (i) the General Bar Date and (ii) after the extended deadline provided by Bankruptcy Rule 3005 (for which Mr. Barton was not eligible in any case).  Moreover, Mr. Barton was provided timely notice of the Bar Date Order in accordance with the procedures outlined therein, and, therefore, had adequate notice of the General Bar Date.

20.    Accordingly, the Plan Administrator requests that the Court enter an order disallowing the Barton Claim because the Claim was not timely filed against the Debtors.

## II.    The Barton Claim Should Be Disallowed Pursuant to Section 502(b)(1)

21.    Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]"  11 U.S.C. § 502(b)(1).  Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

22.    Mr. Barton's filed a claim for $5,000,000 in fiat and for cryptocurrency in amounts of 10 BTC and 100 ETH, with current market value of $1,078,122.50 and value as of the Petition Date of $463,202.  Mr. Barton does not state the basis of the Claim.

23.    Mr. Barton opened an account with BUS on September 25, 2020 but never made any deposits, withdrawals, nor placed any orders. The balance in the Barton account as of the Petition Date was $0.00.

24.    Mr. Barton filed the claim as "a guarantor, surety, endorser, or other codebtor [under] Bankruptcy Rule 3005." But he did not attach any documentation supporting such status, and the Debtors' books and records do not reflect Mr. Barton or Table Rock Management LLC as being in the position of a guarantor, surety, endorser, or other codebtor of the Debtors eligible to file a claim under Bankruptcy Rule 3005.

25.    To the extent Mr. Barton's claim consists of damages, they are expressly disallowed pursuant to BUS' terms of service.

26.    To sign up for an account, each customer is required to agree to BUS' terms of service, and when a new version of the terms of service is released, each customer is required to

agree to that version in order to maintain an active account.  Section 17 of BUS' terms of service

disclaim liability for incidental, consequential, and punitive damages, as set forth below:

**17. DISCLAIMER OF DAMAGES[3]**
IN NO EVENT WILL BITTREX, ITS AFFILIATES AND THEIR RESPECTIVE
SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES,
ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR
CONTRACTORS BE LIABLE FOR ANY INCIDENTAL, INDIRECT,
SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR
LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION,
DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR
OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN
CONNECTION WITH THE SITE, THE SERVICES, THE BITTREX
MATERIALS, ANY PERFORMANCE OR NON-PERFORMANCE OF THE
SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM
PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER
CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY
(INCLUDING, FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF
BITTREX), EVEN IF BITTREX HAS BEEN ADVISED OF THE POSSIBILITY
OF SUCH DAMAGES.

27.    Additionally, BUS' terms of service also limit BUS' liability to the amount of fees

paid by a customer to BUS in the 12 months preceding the event giving rise to the claim:

**18. LIMITATION OF LIABILITY[4]**
IN NO EVENT WILL THE LIABILITY OF BITTREX, ITS AFFILIATES AND THEIR
RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS,
EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR
CONTRACTORS ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE
SERVICES, THE BITTREX MATERIALS, ANY PERFORMANCE OR NON-
PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR
OTHER ITEM PROVIDED BY OR ON BEHALF OF BITTREX, WHETHER UNDER
CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY (INCLUDING,
FOR AVOIDANCE OF DOUBT, ANY NEGLIGENCE OF BITTREX] EXCEED THE
AMOUNT OF THE FEES PAID BY YOU TO BITTREX UNDER THIS AGREEMENT
IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT
GIVING RISE TO THE CLAIM FOR LIABILITY.

---

[3]  Section 17 of the current terms of service is identical to section 16 of the terms of service in effect as of December 23, 2017.

[4]  Section 18 of the current terms of service is identical to section 17 of the terms of service in effect as of December 23, 2017.

31503875.2

28.     Pursuant to section 20 of BUS' terms of service, Washington law applies.[5]   The choice of law clause contained in BUS' terms of service is valid and enforceable.  *See, e.g.*, *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 660 (Bankr. D. Del. 2003) (holding that a choice of law clause in a purchase order was enforceable under both federal common law and Delaware state law, and applying the law of the state set forth in the choice of law clause).

29.     Under Washington law, disclaimers of damages and limitations on liabilities are generally enforceable, so long as they are conspicuous and where the counterparty has a reasonable opportunity to understand their terms.  *See, e.g.*, *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 441 (Wash. 2002) (holding that a liability limitation clause was enforceable "as a matter of law" because the clause was conspicuous and the counterparty has "a reasonable opportunity to understand the terms of the clause"); *Stokes v. Bally's Pacwest, Inc.*, 113 Wash. App. 442, 449-50 (Wash. 2002) (holding that a disclaimer of damages clause was enforceable because it was "conspicuous").  The clauses in BUS' terms of services are set out in all caps with bolded headings, and are easily understood.  Therefore, any claim for damages beyond the maximum liability set forth in section 18 of BUS' terms of service must be disallowed.

## CONCLUSION

WHEREFORE, the Plan Administrator respectfully requests that the Court sustain this Objection and disallow the Barton Claim.

---

[5]  Section 19 of the December 23, 2017 terms of service likewise provides for application of Washington law.

Date: April 2, 2024
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*

Robert S. Brady (Delaware Bar No. 2847)
Kenneth J. Enos (Delaware Bar No. 4544)
Rebecca L. Lamb (Delaware Bar No. 7223)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: rbrady@ycst.com
Email: kenos@ycst.com
Email: rlamb@ycst.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Susheel Kirpalani *(admitted pro hac vice)*
Patricia B. Tomasco *(admitted pro hac vice)*
Daniel Holzman *(admitted pro hac vice)*
Alain Jaquet *(admitted pro hac vice)*
Razmig Izakelian *(admitted pro hac vice)*
Joanna D. Caytas *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE PLAN ADMINISTRATOR**

31503875.2